# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5681 | **DATE** | 10/22/2003 |
| **CASE TITLE** | | Silva vs. Barnhart | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons set out in the Memorandum Opinion and Order, the Commissioner's motion for summary judgment [24-1] is denied, Plaintiff's motion for summary judgment [19-1] is granted, judgment is entered on behalf of Plaintiff, and the case is remanded to the Commissioner for further proceedings consistent with the Opinion. This is a final and appealable order. Terminating case.

*Geraldine Soat Brown*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | OCT 23 2003 | |
| | Docketing to mail notices. | date docketed | 29 |
| ✓ | Mail AO 450 form. | docketing deputy initials  JS | |
| | Copy to judge/magistrate judge. | | |
| | | 10/22/2003 | |
| GR | courtroom deputy's initials | date mailed notice | |
| | | GR | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

OCT 2 3 2003

CLEMENTINA SILVA,                    )
    Plaintiff,                    )        Cause No. 02 C 5681
                                  )
v.                                   )        Magistrate Judge Geraldine Soat Brown
                                  )
JO ANNE BARNHART, Commissioner       )
of Social Security,                  )
    Defendant.                    )
                                  )

## MEMORANDUM OPINION AND ORDER

Plaintiff Clementina Silva brought this action pursuant to 42 U.S.C. § 405(g) for judicial

review of the decision of the Commissioner of Social Security.   In 1999, Plaintiff applied for

Supplemental Security Income ("SSI"). (R. 127-128.)[1] Following the denial of Plaintiff's claim

initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on

December 6, 2000, who issued an unfavorable decision on February 22, 2001. (R. 100, 108, 25, 26.)

The Appeals Council declined to review Plaintiff's claim. (R. 7-8.) The parties have consented to

the jurisdiction of a magistrate judge, [dkt 13, 14], and both parties have moved for summary

judgment. [Dkt 19, 24.]   For the reasons stated below, the Commissioner's motion is denied,

Plaintiff's motion is granted, and the case is remanded for further proceedings.

---

[1]"R.____" refers to the certified record of proceedings, evidentiary documents, and
administrative hearing transcripts prepared by the Social Security Administration's Office of
Hearings and Appeals pursuant to 42 U.S.C. § 405(g).

# BACKGROUND

## A. Personal History

Plaintiff was 33 years old at the time of the hearing before the ALJ in 2000. (R. 32.) She has received a GED. (R. 33.) Plaintiff worked as a warehouse picker/packer in 1998 and 1999. (R. 154.) From 1996 to 1998 she worked for a pharmaceutical company as a production operator, quality assurance inspector and a material handler. (*Id.*) Plaintiff held several other jobs prior to 1996. (R. 42-45.) The ALJ found that Plaintiff had not performed any gainful employment since the date of her application for benefits. (R. 19.)

## B. Medical History

Plaintiff claims disability based on chronic systemic lupus erythematosus[2] and associated symptoms including difficulty breathing, difficulty grasping and walking, as well as asthma and depression.

Dr. Kenneth Margules has been Plaintiff's doctor since 1988 or 1989. (R. 313.) In an October 30, 1999 letter he summarized Plaintiff's medical history to that date for an adjudicator with the Illinois Department of Human Services. Dr. Margules stated that when he began treating Plaintiff as a teenager she had "hectic life-threatening systemic lupus erythematosus" characterized by facial

---

[2] Systemic lupus erythematosus is a "serious, often fatal, disease" accompanied by various lesions in the organs, skin eruptions, fever, and other symptoms. "The outstanding clinical signs include weakness, fatigability, arthritis resembling rheumatoid arthritis, redness of the skin in patches (on the face, neck, and arms), pericarditis, pleurisy, swelling of the lymph nodes, anemia, etc." J. E. Schmidt, *Attorneys' Dictionary of Medicine* Vol. 3, L-207-08 (Matthew Bender, December 2002). Pericarditis is the inflamation of the sac surrounding the heart. *Id.* at Vol. 4, P-166. Pleurisy is the inflammation of the membrane lining the inner chest walls and lungs, resulting in considerable pain on breathing. *Id.* at Vol. 4, P-299.

erythema[3], severe arthritis and "rapidly progressive kidney failure." (R. 313.) She was treated with "aggressive chemotherapy" and as of 1999, her "rash and kidney failure [had] abated, but she still [had] mildly active lupus with arthritis, serositis,[4] and proteinurea. (R. 313.) Dr. Margules further noted that Plaintiff's condition has "taken a turn for the worse." Dr. Margules reported:

> Lately [Plaintiff] has developed a cough, shortness of breath and difficulty breathing, sometimes even with very short walks. A chest x-ray which was done recently during an emergency room admission for shortness of breath revealed progressive pulmonary interstitial fibrosis. Thus, I am convinced, however sorry, that the lupus has begun to include her lungs as well. The most recent laboratory test I have for her lupus are actually old, because she has been either underinsured or non-insured for the past year . . . She needs to be seen on a very frequent basis, every two to four weeks. She needs to be on chemotherapy, again, rather intensively, and will have to have close supervision for the rest of her life. She has outlived her prognosis, and I am frankly surprised that she is alive today.

(R. 314.)

Dr. Margules' subsequent medical records regarding Plaintiff show both positive and negative signs. In January, 2000, he referred Plaintiff to Dr. Agarwal, a pulmonary specialist. (R. 52, 271.) On January 20, 2000 two x-rays of Plaintiff's chest were taken indicating no radiographic evidence of acute cardiopulmonary findings. (R. 232.) On February 3, 2000, a high resolution CT image was taken of Plaintiff's chest. (R. 189.) The interpretation of that image indicated that there was "no evidence of significant pulmonary interstitial fibrosis." (*Id.*) Plaintiff was given a stress test on February 10, 2000. (R. 188.) Exercising on a treadmill, she was able to attain approximately 80%

---

[3]Erythema is an abnormal reddening of the skin. Schmidt, *Attorneys' Dictionary of Medicine* at Vol. 2, E-181-82.

[4]Serositis is the inflamation of a serous membrane, which is a membrane lining a body space such as the inside of the chest that has no connection to the outside. Schmidt, *Attorneys' Dictionary of Medicine* at Vol. 5, S-120.

of her maximum predicted heart rate and suffered mild chest discomfort. (*Id.*) The report of the test concluded that she had no arrhythmias with exercise, and a fair exercise tolerance. (*Id.*) On July 14, 2000, Dr. Margules noted "no swelling . . . No rashes [,] feels great." (R. 293.) Similarly, on May 23, 2000, he noted "lungs clear[,] feels great." (R. 291.) Yet in an undated notation he indicated that Plaintiff was "very depressed [with] thoughts of suicide," (R. 286) (emphases omitted). A pulmonary function report dated September 7, 2000 indicates findings suggestive of "upper airway obstruction, neuromuscular weakness, or lack of optimal effort." (R. 331.) On September 8, 2000, Dr. Margules noted that Plaintiff was tearful, depressed and that her "joints hurt." (R. 284) (emphasis omitted).

On December 13, 1999, Dr. Glynis Vashi completed an examination of Plaintiff on behalf of the Bureau of Disability Determination Services ("DDS"). (R. 220.) Her diagnostic impression was as follows: "1. History of systemic lupus, currently in remission. 2. Shortness of breath secondary to #1. 3. Joint pains and swelling secondary to #1. 4. Fatigue secondary to #1. " (R. 223.) Dr. Vashi observed that Plaintiff had some joint swelling with tenderness in upper extremities. (*Id.*) Plaintiff had mild difficulty tandem walking and walking on her toes and heels, and moderate difficulty squatting and hopping on one leg. (*Id.*) Dr. Vashi further noted that Plaintiff did not need or use an assistive device and had no difficulty getting on and off the exam table. (*Id.*) She observed that Plaintiff's grip strength was equal and strong in both hands. (R. 222.)

On May 1, 2000, Dr. Robert Baker, a diplomat of the American Board of Psychiatry & Neurology and of the American Board of Adolescent Psychiatry, interviewed Plaintiff on behalf of the Social Security Administration ("SSA"). (R. 233.) He diagnosed Plaintiff with Depressive Disorder NOS [not otherwise specified] and "Axis III: Lupus and Asthma." (R. 234.)

On June 15, 2000, Dr. Jerrold Heinrich, a DDS physician, completed a Mental Residual

4

Functional Capacity Report ("MRFC") and a Psychiatric Review Technique Form ("PRTF") regarding Plaintiff. (R. 235-238, 239-247.) In his MRFC Dr. Heinrich concluded that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods. (R. 235.) He also found her moderately limited in her ability to interact appropriately with the general public and respond appropriately to changes in the work setting. (R. 236.) He concluded that Plaintiff:

> retains the mental capacity to follow some detailed instructions, but she needs a job within an organized and repetitive work setting. Social skills are adequate for basic interactions, but she can not cope with frequent interactions with the public. Adoptional capacity is lowered; she needs a job without frequent changes in routine. Within noted limitations she retains the mental capacity and emotional stamina to do simple unskilled tasks.

(R. 237.)

In his PRTF Dr. Heinrich concluded that Plaintiff suffered from depressive disorder NOS characterized by appetite disturbance with change in weight, sleep disturbance, difficulty concentrating or thinking and thoughts of suicide. (R. 242.) He found that Plaintiff had moderate difficulty in maintaining social functioning and often had deficiencies in concentration, persistence and pace. (R. 246.)

On June 28, 2000, Dr. Stanley Burris, who apparently did not examine Plaintiff, completed a residual functional capacity ("RFC") evaluation regarding Plaintiff. (R. 248-255.) He found that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds, and could stand and sit for about six hours in an eight hour work day. (R. 249.) He found that Plaintiff had no limitations in areas including posture, manipulation and environment. (R. 250-252.)

At the time of the hearing before the ALJ, the Plaintiff was taking the following medications:

5

Prozac[5], Elavil[6], Imipramine, [7] Halcion[8], Albuterol[9] via a nebulizer, Singulair[10] via an inhaler, Prednisone[11] and Ecotrin.[12] (R. 31-32, 185.)

At the hearing before the ALJ, Plaintiff testified that her hands are swollen almost every day, her knees are swollen constantly and her feet are swollen every day. (R. 35.) Plaintiff stated that her feet swell so badly almost every day that she cannot put on shoes and socks, and her fingers swell badly enough approximately every other day that she cannot bend them or tie her shoe or use a button or zipper. (R. 47, 59.) She has shortness of breath severe enough to prevent her from walking down a flight of stairs approximately three times a week . (R. 48-49.) She stated that she can shop for about half an hour before her knees start to hurt and can vacuum and dust for about ten minutes

---

[5]Prozac is an antidepressant. The "more frequent side effects include nervousness, insomnia, headache, drowsiness, anxiety, sweating, loss of appetite, diarrhea. Occasional side effects include fatigue, dizziness, itching, skin rash, nausea and vomiting, visual disturbances, and backache." Schmidt, *Attorneys' Dictionary of Medicine* at Vol. 2, F-129.

[6]Elavil is used to treat depression. *Id.* at Vol. 2, E-38.

[7]Imipramine is a antidepressant. *Id.* at Vol. 3, I-31.

[8]Halcion is used to treat insomnia. The side effects include: "Addiction and abuse, depression of the central nervous system, dizziness and drowsiness, headache, unsteady gait, impairment of memory, occasional excitement, mental depression, fast heart beat, visual disturbances." *Id.* at Vol. 3, H-10.

[9]Albuterol is a drug used as a bronchodilator for the treatment of bronchospasm in obstructive airway disease. *Id.* at Vol. 1, A-216.

[10]Singulair is used to treat asthma. *Id.* at Vol. 5, S-162.

[11]Prednisone, prevents or alleviates inflammation. Adverse effects of prolonged treatment include wasting of muscles; osteoporosis; spontaneous fractures. *Id.* at Vol. 5, P-407.

[12]Ecotrin is enteric coated tablets of aspirin used primarily to treat arthritis. *Id.* at Vol. 2, E-15.

before she feels fatigued. (R. 49-50.) She stated that she thinks about suicide every day. (R. 50.) She stated that even with sleeping pills she cannot sleep enough to feel rested in the morning. (R. 51.) She stated that her anti-depressant medication makes her drowsy and that she suffers sores in her mouth and lack of appetite from other medications. (R. 52.) Plaintiff states that she takes two naps during the day. (R. 53.) Plaintiff stated that she avoids family get-together to avoid cigarette smoke that aggravates her asthma. (R. 56.) Plaintiff testified that her condition varied. On a good day she is able to clean, vacuum and wash dishes. (R. 45.) On a bad day she lies down virtually all day. (R. 46.) She stated that on average she had three or four bad days a week. (*Id.*)

Plaintiff's sister, Criselda Shreve, also testified at the hearing. (R. 72.) Ms. Shreve lives near Plaintiff and stops in every day before and after work to see Plaintiff. (*Id.*) She testified that she observed Plaintiff in pain and with swollen joints so that Plaintiff cannot lift her arms. (R. 73-74.) Ms. Shreve supported Plaintiff's testimony that Plaintiff is unable to do much for herself four days out of seven. (R. 75) Ms. Shreve also testified that Plaintiff has mood swings and rarely leaves her home. (R. 77.)

## THE ALJ's DECISION

The Social Security Regulations ("Regulations") prescribe a sequential five-part test for determining whether a claimant is disabled. 20 C.F.R. § 416.920 (2003). Under this test the Social Security Commissioner must consider: (1) whether the claimant has performed substantial gainful activity during the period for which he claims disability; (2) if he has not performed any substantial gainful activity, whether the claimant has a severe impairment or combination of impairments; (3) if claimant has a severe impairment, whether the claimant's impairment meets or equals any

impairment listed in the Regulations as being so severe as to preclude substantial gainful activity; (4) if the impairment does not meet or equal a listed impairment, whether the claimant retains the residual functional capacity, despite his impairment, to perform his past relevant work; and (5) if the claimant cannot perform his past relevant work, whether the claimant is able to perform any other work existing in significant numbers in the national economy, considering his residual functional capacity together with his age, education, and work experience. *Id.*; *see also Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof at steps one through four, after which the burden shifts to the Commissioner at step five. *Young*, 957 F.2d at 389.

At the first step, the ALJ found that there was no evidence Plaintiff had engaged in substantial gainful activity since the time of her application. (R. 19.) At the second step, the ALJ found that Plaintiff suffered from severe impairments. (*Id.*) At the third step, the ALJ found that Plaintiff's impairments, individually and in combination, did not equal in severity any listed impairment. (*Id.*) In reaching this finding the ALJ specifically referred to section 3.00 and section 12.04 of 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.*) The ALJ then proceeded to assess Plaintiff's residual functional capacity. The ALJ concluded that Plaintiff could lift and carry ten pounds occasionally and lighter items frequently. (*Id.*) He further found that she can stand and walk for no more than two hours in an eight hour day and for no longer than fifteen minutes continuously and that she can sit for six hours in an eight hour day. (*Id.*) He found that she should not climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs as well as balance, stoop, kneel, crouch and crawl occasionally. (*Id.*) He found that Plaintiff cannot preform fine manipulative tasks with either of her hands more than frequently and must avoid more than moderate exposure to

pulmonary irritants such as fumes, odors, dust and gases. (*Id.*) He concluded that Plaintiff cannot carry out "complex/detailed" instructions or tasks but can perform simple, repetitive tasks on a sustained basis. (R. 20.) Finally, he concluded that Plaintiff cannot perform work that requires more than incidental interaction with the public or which involves frequent changes in the work routine. (*Id.*) At step four, the ALJ concluded that Plaintiff is unable to perform any of her past relevant work. (R. 23.) At step five, the ALJ concluded that Plaintiff was capable of performing a significant number of other jobs in the region and that she is thus not disabled for purposes of the Social Security regulations. (R. 23-24.)

> In assessing the credibility of Plaintiff and her sister, the ALJ stated:
>
> [T]he objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision. In addition, consideration of the factors described in 20 C.F.R. § 416.929(c)(3) and Social Security Ruling 96-7p also leads to a conclusion that the claimant's allegations of disabling symptoms and limitations cannot be accepted . . . . I find the claimant's testimony and testimony of the claimant's sister was not fully substantiated or consistent with the longitudinal record in this case. The record likewise does not show the claimant to be receiving ongoing treatment for her depressive symptoms.

(R. 22) (citations omitted).

A vocational expert ("VE") testified at the hearing. (R. 26, 79-81, 83-95.) The VE responded to a number of hypothetical questions from the ALJ. The VE was asked whether a hypothetical person with Plaintiff's characteristics and with a RFC as ultimately found by the ALJ would be able to work; the VA testified that numerous jobs would be available. (R. 89-90.) The VE further testified that if Plaintiff were restricted to sedentary work and required to use a cane a "couple" of days a week she would be unable to work. (R. 94, 88-89.) The VE also testified that if Plaintiff missed more than two days of work a month, substantial gainful activity would be precluded. (R. 95.)

The VE also concluded that if Plaintiff were limited to only slight exposure to pulmonary irritants, all work would be precluded. (R. 91-92.)

## LEGAL STANDARD

The Social Security Act provides for limited judicial review of a final decision of the Commissioner (effectively that of the ALJ where, as here, the Appeals Council has denied the applicant's request for review). Where the ALJ commits an error of law, "reversal is required without regard to the volume of the evidence in support of the factual findings." *Imani v. Heckler*, 797 F.2d 508, 510 (7th Cir. 1986). With respect to the ALJ's conclusions of fact, the reviewing court's role is limited. There the role of the district court is only to determine whether the decision of the ALJ is supported by substantial evidence in the record. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). In reviewing the Commissioner's decision, the court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *Brown v. Chater*, 913 F. Supp. 1210, 1213-14 (N.D. Ill. 1996). Thus, the court does "not substitute [its] own judgment for that of the ALJ." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). Rather, the court must affirm a decision if it is supported by substantial evidence and the ALJ has made no error of law. *Herr v. Sullivan*, 912 F.2d 178, 180 (7th Cir. 1990); *Edwards v. Sullivan*, 985 F.2d 334, 336-37 (7th Cir. 1993). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

When evaluating a disability claim the ALJ must consider all relevant evidence and may not

select and discuss only that evidence that favors his ultimate conclusion. *Herron*, 19 F.3d at 333. Where conflicting evidence allows reasonable minds to differ, the responsibility for resolving the conflict falls on the ALJ, not the court. *Herr*, 912 F.2d at 181; *see also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) ("[t]he ALJ has the authority to assess medical evidence and give greater weight to that which he finds more credible"). Where there is a conflict between medical opinions, the ALJ may choose between those opinions but may not substitute his own lay opinion for that of the medical professionals. *Davis v. Chater*, 952 F. Supp. 561, 566 (N.D. Ill. 1996). "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (citing 20 C.F.R. § 416.927(d)(2)).

Although the district court's role is limited to determining whether the ALJ's final decision is supported by substantial evidence and based upon proper legal criteria, this does not mean that the ALJ is entitled to unlimited judicial deference. Regardless of whether there is adequate evidence in the record to support the ALJ's decision, the ALJ must build an accurate and logical bridge from the evidence to his or her conclusions, because the court confines its review to the reasons supplied by the ALJ. *Blakes ex rel Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). If the evidence on which the ALJ relied does not support the ALJ's decision, the decision cannot be held. *Id.* The ALJ must state his reasons for accepting or rejecting "entire lines of evidence," although he need not evaluate in writing every piece of evidence in the record. *See Herron*, 19 F.3d at 333; *see also Young*, 957 F.2d at 393 (ALJ must articulate his reason for rejecting evidence "within reasonable limits" in order to allow for meaningful appellate review). An ALJ's opinion cannot contain conflicting factual determinations. *Smith v. Massanari*, No. 00-C-7504, 2001 WL 936123 at *1

## DISCUSSION

Plaintiff makes several arguments for reversal.

### I. Listing 14.02.

Plaintiff argues that the ALJ failed to analyze properly whether Plaintiff met listing 14.02 (section 14.02 of 20 C.F.R. Pt. 404, Subpt. P., App. 1).[13] In requesting a hearing before an ALJ, Plaintiff asserted that she met listing 14.02(A) and (B). (R. 111.) Listing 14.02 applies to when a diagnosis of systemic lupus erythematosus has been made, as it has been with respect to Plaintiff. The listing can be met by combining that diagnosis with one of the eleven factors listed in 14.02(A) or, under 14.02(B), with "[l]esser involvement of two or more organs/body systems . . . with significant, documented constitutional symptoms and signs of severe fatigue, fever, malaise and weight loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that Plaintiff suffered from "the

---

[13] Listing 14.02 reads as follows:

14.02 Systemic lupus erythematosus. Documented as described in 14.00B1, with:
A. One of the following:
1. Joint involvement, as described under the criteria in 1.00; or
2. Muscle involvement, as described under the criteria in 14.05; or
3. Ocular involvement, as described under the criteria in 2.00ff; or
4. Respiratory involvement, as described under the criteria in 3.00ff; or
5. Cardiovascular involvement, as described under the criteria in 4.00ff or 14.04D; or
6. Digestive involvement, as described under the criteria in 5.00ff; or
7. Renal involvement, as described under the criteria in 6.00ff; or
8. Hematologic involvement, as described under the criteria in 7.00ff; or
9. Skin involvement, as described under the criteria in 8.00ff; or
10. Neurological involvement, as described under the criteria in 11.00ff; or
11. Mental involvement, as described under the criteria in 12.00ff.

Or
B. Lesser involvement of two or more organs/body systems listed in paragraph A, with significant, documented, constitutional symptoms and signs of severe fatigue, fever, malaise, and weight loss. At least one of the organs/body systems must be involved to at least a moderate level of severity.

severe impairments of systemic lumpus erythematosus, with musculoskeletal and pulmonary involvement, and depression/anxiety." (R. 19.) The ALJ did not, however, systematically analyze whether Plaintiff's symptoms meet listing 14.02. The ALJ discussed, "for example," listings 3.00 and 12.04, which are factors in the 14.02(A) prong. (*Id.*) The ALJ never considered whether Plaintiff meets or equals the 14.02(B) criteria or the remainder of the 14.02(A) criteria. Indeed, the ALJ never actually mentioned listing 14.02.

Remand was ordered in both *Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003), and *Scott v. Barnhart*, 297 F.3d 589, 596 (7th Cir. 2002), in part because of ALJ's insufficient discussion of whether the plaintiff met a listing. In *Scott*, the Court of Appeals observed that the ALJ failed to refer to the relevant listing. "By failing to discuss the evidence in light of [the listing's] analytical framework, the ALJ has left this court with grave reservations as to whether his factual assessment addressed adequately the criteria of the listing." 297 F.3d at 595. Those reservations are likewise applicable in the present case, where, after finding that Plaintiff suffered from "the severe impairment[] of systemic lumpus erythematosus, with musculoskeletal and pulmonary involvement and depression/anxiety" (R. 19), the ALJ failed to assess whether the severity of Plaintiff's musculoskeletal or pulmonary involvement or her depression and anxiety when considered with other relevant symptoms of which there is evidence in the record, such as fatigue, malaise and weight loss, met the criteria of listing 14.02(B). As a result, the ALJ failed to address the criteria of the listing in a manner sufficient to "assure [the court that he] considered the important evidence" and to "[enable the court] to trace the path" of his reasoning. *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (quoting *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)). The ALJ's limited discussion at step three of the analysis is simply inadequate under the standards articulated by the

Seventh Circuit.

The Commissioner's arguments with respect to this issue are contrary to the law or the record or both. The Commissioner argues that "Listing 14.02 specifically requires that a claimant meet (at least in this particular case) either Listing 3.00 or 12.04 as well as have the diagnos[i]s of lupus. Because [the ALJ] specifically found that neither Listing . . . was met, no further discussion was necessary." (Def.'s Mem. at 11.) As is evident from even a cursory reading of listing 14.02, a claimant can meet listing 14.02 without meeting *either* listing 3.00 or listing 12.04.

The Commissioner further argues that Plaintiff has waived this argument by failing to offer any evidence in support of her meeting the listing. (*Id.* at 8-11.) However, the fact that there was evidence in the record sufficient to allow the *ALJ* to conclude that Plaintiff has lupus with "musculoskeletal and pulmonary involvement, and depression/anxiety" speaks for itself.

The Commissioner argues that the evidence does not support a finding that Plaintiff meets listing 14.02. (Def.'s Mem. at 8-10.) However, the Seventh Circuit has specifically refused to consider after-the-fact arguments by the Commissioner as a substitute for appropriate analysis by the ALJ. "[R]egardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). *See also Scott*, 297 F.3d at 595-596 (stating that "[a]lthough the Commissioner submits that the evidence of record demonstrates that [the plaintiff] could not satisfy [the listing] . . . we are hard pressed to find this precise conclusion either implicitly or explicitly in the ALJ's opinion.")

It would be particularly inappropriate for the court to undertake an evaluation of whether

Plaintiff's symptoms meet part (B) of listing 14.02, where the ALJ failed to indicate that he even considered that subsection. The case must be remanded for a proper step three analysis.

## II. Plaintiff's Credibility

Plaintiff argues that the ALJ erred in his assessment of Plaintiff's credibility. The ALJ stated:

> [C]onsideration of the factors described in 20 C.F.R. § 416.929(c)(3) and Social Security Ruling 96-7p also leads to a conclusion that the claimant's allegations of disabling symptoms and limitations cannot be accepted . . . . I find the claimant's testimony and testimony of the claimant's sister was not fully substantiated or consistent with the longitudinal record in this case. The record likewise does not show the claimant to be receiving ongoing treatment for her depressive symptoms.

(R. 22.) The ALJ also concluded that the medical evidence failed "to provide *strong* support for the claimant's allegations of disabling symptoms and limitations." (R. 20) (emphasis added.)

Plaintiff argues that the ALJ failed to evaluate Plaintiff's credibility as required by 20 C.F.R. at § 416.929 and SSR 96-7p, pointing in particular to the ALJ's failure to consider the effects of Plaintiff's medications on her limitations. The Commissioner asserts that "[t]he ALJ reasonably considered all of Plaintiff's subjective complaints, including the documented side effects of any medications, in determining that she had the capacity for a limited range of sedentary work." (Def.'s Mem. at 12.) The Commissioner asserts that under *Herron,* 19 F.3d at 335-336, the ALJ was "not required to make specific findings regarding the side effects of medications separate from the findings made regarding the credibility of Plaintiff's subjective complaints." (Def.'s Mem. at 12.) Significantly, SSR 96-7p was issued in 1996, after the *Herron* decision, which was rendered in 1994. SSR 96-7p was issued to emphasize that:

> [T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a

conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

SSR 96-7p, 1996 WL 374186 at *1 (S.S.A. 1996). Under SSR 96-7p, the adjudicator must consider "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." SSR 96-7p, 1996 WL 374186 at *3. Here the ALJ's opinion fails to reflect any consideration of the side effects of the many medications that Plaintiff takes.

In *Brindisi,* the Seventh Circuit held that an ALJ's opinion failed to comply with SSR 96-7p because it was "lacking any explication that would allow this court to understand the weight given to the [plaintiff's] statements or the reasons for that consideration as required by SSR 96-7p." 315 F.3d at 788. Similarly, in *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001), the Seventh Circuit stated: "Here, the ALJ found Zurawski's complaints of disabling pain 'not entirely credible due to the inconsistencies with the objective medical evidence, and inconsistencies with daily activities.' Unfortunately, we are left to ponder what exactly are these 'inconsistencies' because the ALJ provided no further explanation." The court also emphasized that the ALJ's opinion must reflect consideration of evidence that is favorable to the claimant as well as that which is unfavorable. *Id.* at 888.

Even when allegations of pain are not supported by objective medical evidence,

> If . . . the claimant indicates that pain is a significant factor of his or her alleged inability to work, then the ALJ . . . must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities.

16

*Luna v. Shalala*, 22 F.3d at 691.

In this case the ALJ's opinion falls short of the requirements of SSR 96-7p as explicated in *Brindisi*, *Zurawski* and *Luna*. It is not at all clear why, or to what extent, the ALJ found Plaintiff's testimony and that of her sister not fully credible. The ALJ's statement that the objective findings fail to provide "strong" support for that testimony (R.20), implies that the medical evidence does support Plaintiff's testimony to some extent. In so far as the ALJ's opinion discusses Plaintiff's daily activities, those activities appear consistent with Plaintiff's alleged symptoms. (R. 20.) The ALJ also failed to consider evidence supporting Plaintiff's testimony. For example, the ALJ's finding that the record "does not show the claimant to be receiving ongoing treatment for her depressive symptoms" (R. 22), is inconsistent with his finding Plaintiff is taking Prozac (R. 20), and the undisputed evidence that she is taking Elavil and Imipramine. (R. 185.) The ALJ also failed to consider Plaintiff's testimony that she has no medical insurance (R. 70), which was confirmed by other evidence in the record (R. 211, 314), as a reason why she might not be getting additional treatment.

As in the *Zurawski* case, there is not a sufficient basis to sustain the ALJ's credibility determination, and the case must be remanded for a reevaluation of Plaintiff's testimony regarding pain and resulting limitations.

## III. Plaintiff's RFC

Plaintiff argues that the ALJ erred in a number of respects in his conclusion regarding Plaintiff's RFC. Plaintiff argues that: (a) the ALJ failed to assess Plaintiff's RFC on a regular and

continuing basis as required by SSR 96-8p; (b) the ALJ erred in his assessment of Plaintiff's tolerance for exposure to respiratory irritants; and (c) the ALJ erred in his assessment of Plaintiff's manipulative limitations and use of a cane.

## A. Regular and Continuing Basis

SSR 96-8p defines an RFC assessment as "the individual's maximum remaining ability to do sustained work . . . on a regular and continuing basis; [*i.e.,*] 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184 at *2 (S.S.A. 1996). Plaintiff argues that the ALJ failed to take this definition into account in evaluating Plaintiff's RFC.

The ALJ noted Plaintiff's testimony that her symptoms were much worse on some days than on others. (R. 20.) The ALJ also observed that "[t]reatment records . . . reflect waxing and waning of pulmonary symptoms and musculoskeletal symptoms . . . ." (R. 21.) However, the ALJ did not state whether his RFC constitutes an assessment of what Plaintiff can do on her best days, her worst days, or some hybrid of the two. Nor did the ALJ make a finding as to how often Plaintiff has bad days. *See Gotz v. Barnhart*, 207 F. Supp. 2d 886, 897 (E.D. Wis. 2002) ("The ALJ must determine the frequency of Plaintiff's 'bad days' and decide if their occurrence precludes full time work."). While the ALJ found the testimony of Plaintiff and her sister regarding her limitations to be "not fully substantiated," the court cannot infer from this a conclusion that the ALJ found that Plaintiff had no "bad days" or that she is able to perform at the RFC found by the ALJ on a regular and continuing basis. An ALJ must rationally articulate his conclusions, regardless whether there is sufficient evidence in the record to support his decision. *See Steele*, 290 F.3d at 941. Moreover, to the extent that the ALJ's determination of Plaintiff's capacity was based on his disregard of her

testimony, the determination cannot be sustained because the ALJ's credibility finding was insufficient. On remand the ALJ will thus need to reevaluate Plaintiff's RFC in light of his revised credibility finding and SSR 96-8p.

## B. Pulmonary Irritants

The ALJ found that Plaintiff should avoid a more than moderate exposure to pulmonary irritants. (R. 19.) Had the ALJ found that Plaintiff should avoid more than slight exposure to pulmonary irritants, in addition to her other limitations, work would be precluded. (R. 91.) Plaintiff argues that, given her respiratory issues, the ALJ should have consulted a medical expert to determine Plaintiff's tolerance for respiratory irritants. (Pl.'s Mem. at 14.)

There is no medical basis in the record to support the ALJ's decision to select "moderate" over "slight." The only medical evidence in the record regarding the level of exposure Plaintiff could tolerate was the conclusion of non-examining state agency physician Dr. Burris that Plaintiff had no environmental limitations. (R. 252.) The ALJ apparently rejected that conclusion in the face of the evidence in the record that Plaintiff has been diagnosed with asthma (R. 287), and has been prescribed medications for asthma. *See* n. 10, *supra*. The ALJ adopted a more restrictive RFC than indicated by Dr. Burris with regard to exposure to pulmonary irritants. However, the ALJ's opinion discusses only "bare medical records" (the pulmonary function studies and the chart notations of Dr. Margules) and Plaintiff's testimony that, for example, she avoids family gatherings because the cigarette smoke triggers her asthma. (R. 56.) To the extent the ALJ relied on Plaintiff's testimony, he failed to explain why it credibly supports the limitation he found and not a greater one. To the extent the ALJ relied on bare medical records, the ALJ appears to have 'played doctor.' Judges,

19

including ALJ's, are not qualified to interpret bare medical records."Neither the Appeals Council nor this court is qualified to make [a] medical judgment about residual functional capacity based solely on bare medical findings as to [a] claimant's . . . condition." *Bauzo v. Bowen*, 803 F.2d 917, 926 (7th Cir. 1986) (quoting *Lugo v. Secretary of Health and Human Services*, 794 F.2d 14, 15 (1st Cir 1986)) (alterations in original). *See also Berrios-Lopez v. Secretary of HHS*, 951 F.2d 427, 430 (1st Cir. 1991) (stating that "[s]ince bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess claimant's residual functional capacity based on the bare medical record") (citations omitted). "[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor . . . . Common sense can mislead; lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (citations omitted).

The Commissioner argues that "[t]he record contains extensive medical evidence documenting a relatively mild pulmonary condition. . . ." (Def.'s Mem. at 13.) As discussed above, principles of administrative law require that a proper evaluation of Plaintiff's environmental restrictions be performed by the ALJ based on a full record, not by the court. *See Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000) (ALJ required to obtain medical expert opinion if necessary to provide informed basis for disability determination).

The Commissioner also argues that Plaintiff's counsel at the administrative hearing did not request that any further examination be conducted. (Def.'s Mem. at 13.) Proceedings before the ALJ are intended to be non-adversarial. *Williams v. Massanari*, 171 F. Supp. 2d. 829, 833 (N.D. Ill. 2001). Moreover, the ALJ is required to develop a "full and fair" record. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). The Commissioner cites *Glenn v. Secretary of Health and Human Services*,

814 F.2d 387 (7th Cir. 1987), for the proposition that "[w]hen an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits." *Id.* at 391. However, that assumption does not eliminate the ALJ's obligation to develop the record sufficiently to make a proper decision. *See, e.g., Ray v. Bowen*, 843 F.2d 998, 1006-07 (7th Cir. 1988), remanding the case to the Commissioner with directions to order a psychological examination of the claimant, notwithstanding the Commissioner's invocation of the quotation from the *Glenn* decision.

### C. Manipulative Limitations and Use of a Cane.

Plaintiff complains about the ALJ's conclusion that, despite her testimony to the contrary, Plaintiff can frequently perform fine manipulative tasks, and the ALJ's apparent rejection of Plaintiff's testimony that she began using a cane at the advice of Dr. Margules and now uses a cane approximately four times a week. (R. 88, 94.) The ALJ discussed the December 1999 consultive examination which found a full range of motion in all of Plaintiff's joints and strong bilateral grip strength, notwithstanding some synovitis (inflamation) and deformity. (R. 21, 222.) The ALJ also referred to the RFC in which Dr. Burris found no evidence of manipulative limitations. (R. 22, 251.) The Plaintiff admits that the medical records are silent about whether Dr. Margules suggested that Plaintiff use a cane. (Pl.'s Mem. at 13.) However, Plaintiff's charts from 2000 indicate swelling in her knees (R. 283, 285), which she also mentioned to Dr. Vashi in 1999. (R. 220.)

Because the evidentiary support for these limitations is based substantially on the testimony of Plaintiff and her sister, and, as discussed above, the ALJ's opinion does not reflect an adequate evaluation of the credibility of that testimony, on remand the ALJ shall reevaluate these claimed

limitations in light of the revised credibility determination.

## IV. Testimony of the VE

Plaintiff argues that the ALJ improperly failed to address all of the testimony of the VE in his opinion. (Pl.'s Mem. at 10-11.) The ALJ "may not simply select and discuss only that evidence which favors his ultimate conclusion." *Smith,* 231 F.3d at 438. On the other hand, the ALJ is not required to consider testimony of the VE which assumes facts that the ALJ has properly found not creditable. *See Kasarsky v. Barnhart,* 335 F.3d 539, 543 (7th Cir. 2002) (per curiam) (stating that, to the extent VE testimony is relied upon, "the question posed to the expert must incorporate all relevant limitations from which the claimant suffers"); *Connor v. Shalala,* 900 F. Supp. 994, 1003 (N.D. Ill. 1995) (stating that "the omission [] from the hypothetical question can be dealt with easily, since we have already concluded that there is substantial evidence in the record which supports the ALJ's conclusion that [plaintiff] was not suffering from a mental impairment."). Thus, although an ALJ does not err merely in failing to discuss testimony by the VE that assumed facts the ALJ did not ultimately find, because this case must be remanded for additional factual determinations by the ALJ that might result in a more limited RFC, the ALJ must consider an opinion of the VE that incorporates all of the Plaintiff's limitations as found on remand.

## CONCLUSION

For the reasons discussed above, the Commissioner's motion for summary judgment is denied, Plaintiff's motion for summary judgment is granted, judgment is entered on behalf of Plaintiff, and the case is remanded to the Commissioner for further proceedings consistent with this

opinion. This is a final and appealable order.

IT IS SO ORDERED.

Geraldine Soat Brown
United States Magistrate Judge

October 22, 2003